**Vernon Ray LEWIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 46884.**

Court of Criminal Appeals of Texas.

Dec. 19, 1973.

J. Q. Warnick, Jr., Lubbock, for appellant.

Alton R. Griffin, Dist. Atty., Ronald M. Jackson, Asst. Dist. Atty., Lubbock, Jim D. Vollers, State's Atty. and Buddy D. Stevens, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

The conviction is for possession of marihuana. Appellant waived a jury trial, entered a plea of not guilty before the court and filed a motion for probation. The court, after hearing the evidence, found the appellant guilty, assessed a penalty of five (5) years, suspended imposition of sentence and granted probation.

Appellant initially challenges the sufficiency of the evidence that the contraband was under his care, custody and control.

The record reflects that at approximately 3 a. m. on October 7, 1970, Officers

Summerlin and Ontiveroz of the Lubbock Police Department responded to a burglary alarm at the Kwik-O Food Store at Broadway and Quirt in Lubbock and discovered several cartons of cigarettes had been taken. They then began to patrol the area "in search of suspects."

At approximately 3:20 a. m. while patrolling, they observed an automobile with two persons in it pass them and stop at the flashing red traffic light at the intersection of Quirt and East Broadway. The officers then observed there was no brake light on the vehicle. As the officers signaled with siren and spotlight for the driver of the automobile to stop, Officer Summerlin noticed the passenger leaned forward in his seat and appeared to place something under the right front seat. A three block pursuit ensued before the officers were able to stop the vehicle. Officer Ontiveroz then had appellant, the driver, produce his driver's license and then requested him to step out of the vehicle and walk toward the rear. Immediately thereafter, co-defendant Artis Lee Nathan alighted from the passenger's side of the vehicle and offered his driver's license to Officer Summerlin though he had not been requested to do so. Ontiveroz then walked up to the passenger's side of the car, shined his flashlight inside and noticed a brown paper sack on the floorboard of the passenger's side extending from under the seat. Upon inspection of the bag, Ontiveroz stated to Summerlin that, "We have some grass." Upon hearing of the officer's discovery, Nathan walked over to the adjacent vacant lot, kicked the dirt and stated, "We've had it." Nathan then ran to the car, grabbed the bag from the car seat and began running in an effort to escape the officers while throwing things off to his left side. Both officers fired warning shots and Summerlin pursued Nathan. After Nathan was apprehended, both he and the appellant were arrested and taken into custody.

A subsequent search in the immediate area along the escape route produced the contraband which was used in evidence against the appellant.

■ In proving possession in narcotics cases, various facts and circumstances surrounding a search may be shown to prove that the accused and other persons acted together in jointly possessing a narcotic. Collini v. State, 487 S.W.2d 132 (Tex.Cr. App.1972); Harvey v. State, 487 S.W.2d 75 (Tex.Cr.App.1972); Adair v. State, 482 S.W.2d 247 (Tex.Cr.App.1972); Ochoa v. State, 444 S.W.2d 763 (Tex.Cr.App.1969); Buntion v. State, 476 S.W.2d 317 (Tex.Cr. App.1972); Ellis v. State, 456 S.W.2d 398 (Tex.Cr.App.1970); Perry v. State, 164 Tex.Cr.R. 122, 297 S.W.2d 187 (1957). Thus, in furnishing the affirmative link between the accused and the narcotic additional independent facts and circumstances must be established indicating the accused's knowledge of the narcotic as well as his control over such. Collini v. State, supra; Adair v. State, supra; Harvey v. State, supra.

■ Viewing the evidence in the light most favorable to the court's judgment, we find that, although the appellant did not attempt to escape after the discovery of the contraband, he refused to stop the car he was driving at 3:20 a.m. during the three block pursuit, despite the officers' signals, until Nathan, a passenger in the front seat, attempted to conceal the contraband underneath the front seat.

Further, the spontaneous declaration of "We've had it" made by Nathan to the appellant in the presence of the officers clearly furnished additional independent facts linking appellant to the contraband. See Thomas v. State, 403 S.W.2d 801 (Tex.Cr.App.1966); Goforth v. State, 100 Tex.Cr.R. 442, 273 S.W. 845 (1925). It is therefore apparent from the record that appellant knew of the presence of the marihuana, that the marihuana was within his plain view and conveniently accessible to him. See and compare Curry v. State, 465

S.W.2d 154 (Tex.Cr.App.1971); Lewis v. State, 439 S.W.2d 351 (Tex.Cr.App.1969); Courtney v. State, 424 S.W.2d 440 (Tex.Cr.App.1968); Wagner v. State, 80 Tex.Cr.R. 66, 188 S.W. 1001 (1916).

Appellant's first ground of error is overruled.

In his second ground of error appellant complains that the marihuana was found as a result of an unreasonable search and seizure.

■ In the instant case the officer was authorized to stop the vehicle for the traffic violation. See Article 6701d, Secs. 118 and 153, Vernon's Ann.Civ.St. Article 14.-01, Sec. (b), Vernon's Ann.C.C.P., provides that an officer may arrest for an offense committed within his presence.

■ While the arrest was valid, there are no fruits of the offense of driving a motor vehicle with a defective taillight or broken light. See United States v. One 1963 Cadillac Hardtop, [D.C.], 224 F.Supp. 210 (1963). There is more here, however, than a mere arrest for a traffic offense. When the officers attempted to stop the vehicle at 3:20 a.m., appellant's companion was observed making movements as if he was trying to place something under the front seat. After the three block pursuit, the companion Nathan left the car in an apparent attempt to keep the officers from getting near the front seat. Officer Ontiveroz, a six year police veteran, testified he was concerned that the two men had weapons which might put the officers in danger or facilitate escape, and that he was concerned about what Nathan had been attempting to conceal. He shined his flashlight into the car and observed the brown sack extending out from under the front seat. The search of the vehicle at the time was limited to an examination of the sack.

■ An "officer should be permitted to *take* every reasonable precaution to safeguard his life in the process of making an arrest." State v. Riley, 240 Or. 521, 402 P.2d 741, 743 (1965); Wallace v. State, 467 S.W.2d 608, 610 (Tex.Cr.App.1971). All searches incidental to arrest cannot be justified on this theory, for to do so would allow wholesale fishing expeditions whenever a legal arrest is made. United States v. Tate, [D.C.], 209 F.Supp. 762 (1962). See also Adair v. State, 427 S.W.2d 67, 75 (Tex.Cr.App.1968) (dissenting opinion). If, however, from the totality of the circumstances presented to the officer he has reasonable grounds to believe that he is in danger of bodily harm or injury or that the person he encounters is armed or dangerous, justification for a search for weapons exists. Brinegar v. State, 97 Okl.Cr. 299, 262 P.2d 464 (1953); State v. Scanlon, 84 N.J.Super. 427, 202 A.2d 448 (1964); Elliott v. State, 173 Tenn. 203, 116 S.W.2d 1009 (1938).

In Breckenridge v. State, 460 S.W.2d 907 (Tex.Cr.App.1970), the officer who stopped the automobile for speeding after chase noticed the passenger "moving about" as the driver approached the officer. The officer then walked up to the car and opened the car door and saw a shotgun barrel sticking out from under the front seat. A search for other weapons turned up marihuana in the glove compartment. The search was upheld.

The *Breckenridge* fact situation is similar to the case at bar except that the record in the instant case shows only limited intrusion in a search for weapons for protection of the officers.

In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, the United States Supreme Court wrote:

"In view of these facts (in Terry), we cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for arrest. When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed

and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm."

The record in the instant case evidences the action of an experienced policeman who in the course of an investigation had to make a quick decision as to how to protect himself and others from possible danger and took limited steps to do so. The facts and circumstances detailed reflect that a reasonably prudent man would have been warranted in believing that Nathan or Lewis was armed and presented a threat to the officers' safety while investigating the suspicious behavior described. The search was strictly circumscribed by exigencies which justified its initiation. Terry v. Ohio, supra, 392 U.S. 1, 88 S.Ct. at 1882.

We conclude the officers had reasonable grounds under the facts described and the totality of the circumstances to search for weapons or like material which would constitute a danger to their lives or which might be used to facilitate escape. See Wallace v. State, 467 S.W.2d 608 (Tex.Cr. App.1971).

Appellant's second ground of error is overruled.

■ Appellant's last ground of error complains that the State failed to prove a proper chain of custody as it was never shown that the marihuana discovered in the automobile was the same item found adjacent to Nathan's attempted escape route. We do not agree.

Officer Ontiveroz testified that when he initially looked inside the sack he saw two plastic bags containing a green plant substance and three penny matchboxes, and that based on his experience it was his opinion the substance was marihuana. After Nathan grabbed the bag, he was seen throwing the items off to his left side. After his apprehension, a search of the

area where he threw the items was made and they were recovered, and Ontiveroz placed his initials thereon. At the trial he identified the marihuana and other items as those which he initially observed in the bag.

The judgment is affirmed.