**Balram R. JERRY, Appellant,**

v.

**KENTUCKY CENTRAL INSURANCE COMPANY, Appellee.**

No. 01–91–00872–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 26, 1992.

Rehearing Denied Oct. 1, 1992.

Edwin I. McKellar, Jr., Seth Ellerin, Houston, for appellant.

Julie L. Rhoades, Butler & Binion, Houston, for appellee.

Before OLIVER–PARROTT, C.J., and JONES and PRICE,* JJ.

## OPINION

PRICE, Justice (Assigned).

Balram R. Jerry (Jerry) appeals the trial court's take-nothing judgment against Kentucky Central Insurance Company (the company) on his claims for breach of contract, negligence, breach of the duty of good faith and fair dealing, and violations of the Texas Insurance Code [1] and Deceptive Trade Practices Act.[2]

In November 1985, Jerry and his wife, Valerie, moved to Utah for employment reasons. They retained ownership of their house at 4502 Allison Road, Harris County, Texas (the property). In April 1986, Valerie returned to the property and discovered it had been broken into and vandalized. Most of their belongings were gone and what was left was damaged. The Jerrys submitted a theft claim to their contents insurer and received replacement value for the furnishings. About six months later, Valerie's parents visited the property and discovered it destroyed by fire. On November 11, 1986, Jerry reported the fire to the company.

J.H. Lamb, Sr. of J.H. Lamb Claims Service investigated the claim. On November 24, 1986, Lamb took a signed statement from the Jerrys and forwarded the results of his investigation to the company. On December 16, 1986, Lamb wrote Jerry, informing him that due to policy violations, the company was denying insurance coverage for the fire.

The company sent a notice cancelling the policy because the property had been vacated. By the terms of the policy, the company was not liable if the house was vacant for more than 90 days. The policy also provided, however, that a "building in the course of construction shall not be deemed to be vacant."

In his first, third, and fourth points of error, Jerry asserts, because there was legally and factually insufficient evidence, the trial court erred in finding the house vacant and not under construction at the time of the fire.

■■■ The trial court's findings of fact are reviewable for legal and factual sufficiency by the same standards used to review jury answers. *Okon v. Levy,* 612 S.W.2d 938, 941 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.). The trial court, as the trier of fact, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Criton Corp. v. Highlands Ins. Co.,* 809 S.W.2d 355, 359 (Tex.App.—Houston [14th Dist.] 1991, no writ). Findings of fact in a case tried to the trial court have the same force and dignity as a jury's verdict upon special issues. *City of Clute v. City of Lake Jackson,* 559 S.W.2d 391, 395 (Tex.Civ. App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.).

■■■ In reviewing a legal sufficiency challenge, we view the evidence in the light most favorable to the judgment, considering only the evidence and inferences which support the findings and rejecting those

---

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

1. Tex.Ins.Code Ann. art. 21.21 (Vernon Supp. 1992).

2. Tex.Bus. & Com.Code Ann. § 17.41–17.826 (Vernon 1987).

contrary to the findings. *Stedman v. Georgetown S. & L. Ass'n,* 595 S.W.2d 486, 488 (Tex.1980); *Byler v. Garcia,* 685 S.W.2d 116, 121 (Tex.App.—Austin 1985, writ ref'd n.r.e.). If there is more than a scintilla of evidence to support the finding, the point of error must be overruled. *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex. 1987); *Byler,* 685 S.W.2d at 121. In reviewing a factual sufficiency challenge, we examine all of the evidence, and after considering and weighing all of the evidence, we may set aside a finding only if it is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *Criton,* 809 S.W.2d at 359. The trial court's conclusions of law drawn from the findings are reviewed for their correctness. *Mercer v. Bludworth,* 715 S.W.2d 693, 697 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.).

■ The term "vacant" means entire abandonment, deprived of contents, empty, that is, without contents of substantial utility. *Knoff v. United States Fidelity and Guar. Co.,* 447 S.W.2d 497, 501 (Tex.Civ. App.—Houston [1st Dist.] 1969, no writ).

■ The Jerrys gave Lamb a statement saying they left for Utah in November 1985, that they had cut-off the utilities, and that the house was not occupied by anyone from the time they left for Utah through the time the fire occurred in October 1986. At trial, a letter written by Jerry in February 1987 was introduced into evidence, in which he stated, "Everything of value was taked [sic]" when the house was burglarized. The Jerrys were compensated for most of the stolen items, but the evidence conflicted on whether the items were replaced in the house.

Valerie's brother, testified that in August 1986, he went to the property to cut the grass. A man fixing the house let him in. While there, he saw living room furniture, a folded out sofa, wicker furniture, a bedroom suite, show cases, lumber, and building materials. He also saw that a portion of the bathroom floor had been repaired.

Clifton Van Putten testified that in March or April 1986, Jerry contacted him to perform general repairs to the house. Working over a period of time, he put in new locks, doors, and a new porch. He was last on the property two to three weeks before the fire. He testified the house was furnished and had a bedroom suite, a living room sofa, end tables, a dining room table with chairs, pictures on the walls, and clothes. Van Putten said he stored building materials in the house— plywood, two by four's, two by six's, shingles, and roof adhesive.

Lamb, the adjuster, had over 40–years experience and considerable fire investigation training. Upon investigation, he found the home contained no refrigerator, stove, pots and pans, or light meter. There was no evidence of furniture in the master bedroom or living room, although there was some evidence of a chest of drawers in the small bedroom. He saw unburned mattresses in the yard of the home; an indication that it had been abandoned before the fire. A neighbor told Lamb that the doors to the house had been left open for months before the fire.

■ Where the trial court's findings are supported by evidence of probative force, we will give credence to the evidence favorable to the findings and disregard all evidence to the contrary. *Martin v. Flener,* 543 S.W.2d 756, 759 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.). We hold there was legally and factually sufficient evidence to support the court's finding that the house was vacant. *Knoff,* 447 S.W.2d at 501.

■ Jerry also asserts the vacancy clause was suspended by Van Putten's activities to repair the house. "Repair" is defined as "to restore by replacing a part or putting together what is torn or broken." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1923 (3rd ed. 1976). "Construction" is defined "as the act of putting parts together to form a complete integrated object," *Id.* at 489, or as the "creation of something new, as distinguished from the repair or improvement of something already existing." BLACK'S LAW DICTIONARY 312 (6th ed. 1990). The record supports the

finding that Van Putten was engaged in restoring the damaged property or in "repair," rather than creating something new, as one engaged in "construction." Accordingly, we hold the trial court did not err in finding the house was not under construction at the time of the fire, or in concluding that, as a matter of law, the term, "construction," as used in the policy, meant creation of a new structure.

Jerry's first, third, and fourth points of error are overruled.

In his second point of error, Jerry asserts the trial court erred in finding the company did not act in bad faith. He argues the evidence proves that as a matter of law the company acted in bad faith, or alternatively, that the evidence was factually insufficient to support such a finding.

To prevail on a claim for breach of the duty of good faith and fair dealing, the plaintiff must demonstrate: (1) the absence of a reasonable basis for the denial or delay of payment of benefits; and (2) that the insurance company knew or should have known there was no reasonable basis for the denial or delay. *Aranda v. Ins. Co. of N. Am.*, 748 S.W.2d 210, 213 (Tex.1988).

The record shows that when the company denied the fire claim, the company knew the Jerrys had moved to Utah and had cut-off their utilities, that no one had lived in the house from November 1985 to the time of the fire in October 1986, that the house had been vandalized and most of the contents taken in March 1986, and that the company's adjuster found evidence indicating the house had been vacated months before the fire.

The company offered the only opinion testimony on whether there was a reasonable basis for denying the claim. This testimony established the company acted as a reasonable and prudent insurance company in denying the claim.

We hold the evidence was legally and factually sufficient to support the trial court's finding that the company did not act in bad faith in denying the claim. Jerry's second point of error is overruled.

In his fifth point of error, Jerry asserts the trial court erred in concluding he could not prevail on any of his other claims—violation of article 21.21 of the Insurance Code and violation of the Deceptive Trade Practices Act, for attorney's fees and exemplary damages.

To succeed on a claim for bad faith settlement practices under the Insurance Code, a plaintiff must prove the insurer did not attempt to effectuate settlement of the claim once liability became reasonably clear. *Vail v. Texas Farm Bureau Mut. Ins. Co.*, 754 S.W.2d 129, 134–35 (Tex. 1988). Further the plaintiff must prove the insurer acted in accordance with its general business practice. *Chitsey v. National Lloyds Ins. Co.*, 738 S.W.2d 641, 643 (Tex. 1987). Jerry, however, did not introduce any evidence concerning other claims. Further, since the trial court found there was no breach and no liability under the contract, the company's liability never arose, and it could not be accused of an unfair failure to settle.

Jerry also presented no evidence that the company engaged in false, deceptive, or misleading acts in the conduct of the insurance business, and, therefore, did not prove his claim of violation of the Deceptive Trade Practices Act. *See* TEX.BUS. & COM. CODE ANN. § 17.46(a) (Vernon 1987). Since he failed to establish the company's liability, Jerry was not entitled to attorney's fees or exemplary damages provided thereby.

We hold the trial court correctly concluded that as a matter of law Jerry could not establish any of his other claims. Jerry's fifth point of error is overruled.

In his sixth point of error, Jerry asserts the trial court erred in failing to make additional findings of facts.

Findings of facts are not proper if they do not relate to ultimate or controlling issues. *See Garcia v. Ramos*, 546 S.W.2d 400 (Tex.Civ.App.—Corpus Christi 1977, no writ). It is not error for a court to refuse to make findings that are evidentiary in character. *See Jackson v. Jackson*, 552 S.W.2d 630, 633 (Tex.Civ.App.—Austin 1977, no writ).

We have reviewed the additional findings of fact requested by Jerry. These findings are evidentiary in nature, and the court did not err in refusing to make them.

We overrule Jerry's sixth point of error and affirm the judgment.