**$80,631.00 and a 1984 Porsche, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. A14–91–00463–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

July 29, 1993.

Rehearing Denied Sept. 30, 1993.

Jerome Godinich, Jr., Norman Jolly, Houston, for appellant.

Don J. Clemmer, Alan Curry, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and SEARS and ELLIS, JJ.

## OPINION ON REMAND

J. CURTISS BROWN, Chief Justice.

This is an appeal from a judgment of forfeiture in favor of the state. On August 22, 1989, the state filed a notice of seizure and forfeiture alleging a 1984 Porsche and $80,-631 in currency were eligible to be forfeited. After a bench trial, the trial court granted forfeiture as to both the car and the currency. In our original opinion, published at 835 S.W.2d 254 (Tex.App.—Houston [14th Dist.] 1992), rev'd, 842 S.W.2d 277 (Tex.1992), we reversed the trial court's judgment of forfeiture because it failed to set a hearing within 30 days of the filing of an answer to the notice of forfeiture. TEX.REV.CIV.STAT.ANN. art. 4476–15, § 5.07(a) (Vernon Supp.1989) (repealed effective Sept. 1, 1989). Since we disposed of the case for this reason, we did not address the points of error complaining that the evidence was legally and factually insufficient to support the forfeiture. After

our opinion was issued, the supreme court held that the failure to set a hearing within thirty days of a claimant's answer did not require dismissal. State v. $435,000, 842 S.W.2d 642, 645 (Tex.1992). The supreme court then reversed our opinion in the present case, and remanded the cause to this court to address the remaining points of error.[1]

A brief review of the facts is in order. Officer Walter Redman (Redman) of the Houston Police Department received information about a narcotics transaction from a confidential informant. The informant told Redman that Inocencio Guel (Guel) was going to be delivering cocaine, and gave the officer Guel's address and a description of Guel and his automobile. Based on this information, Redman took a number of officers and set up a surveillance of Guel's home. During the surveillance period, the officers saw a Porsche matching the description given by the informant arrive at the residence. Two men got out of the car and entered the house. The person driving the car matched the description of Guel given by the informant. A short time later, Guel and the other man drove off in the Porsche. The police officers followed them. The officers had a Harris County Sheriff's Department patrol car stop the Porsche on the service road of the Eastex Freeway.

As the officers approached the car, they could see Guel, through the tinted windows, moving his hands and handling an object. Redman, afraid that Guel might have a weapon in the car, asked him to step out of the vehicle. When Guel did not comply, Redman opened the driver's door of the Porsche. Redman saw a handgun on the floorboard at Guel's feet. Redman had Guel step out of the vehicle and took custody of the handgun. A knife was found on the passenger side floorboard at the feet of the other man in the Porsche. Guel gave the officers written consent to search the vehicle. No drugs were found, but a briefcase was found on the back seat. Officer Green was called to the scene

1. The United States Supreme Court recently held that a forfeiture under 21 U.S.C. §§ 881(a)(4) and (a)(7) is a monetary punishment subject to the Excessive Fines Clause of U.S. Const., amend. VIII. See Austin v. United States, —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). This argument was not preserved for appellate review in the present case.

with his drug sniffing dog. The dog alerted to the briefcase and it was found to contain $80,631 in cash.

The officers asked Guel for consent to search his home and he signed another consent-to-search form. Redman and four other officers went to Guel's home. The officers searched the home but no drugs were found. They seized a triple beam and balance scale, and another briefcase, which were found in the kitchen. This briefcase contained a number of ledgers which were apparently written in code. Guel was then taken into custody and charged with carrying a prohibited weapon.

The State of Texas filed a notice of seizure and intended forfeiture. Debra Guel, Guel's wife, filed an original answer claiming ownership of the Porsche. She later amended her answer to claim an ownership interest in both the seized currency and the car. Debra Guel assigned her interest in the currency to her attorneys, Norman Jolly, Jr. and Jerome Godinich, Jr., who intervened in the case. The intervenors now challenge the legal and factual sufficiency of the evidence supporting the judgment of forfeiture of the currency.

In reviewing the legal sufficiency of the evidence, we must consider only the evidence and inferences tending to support the trial court's findings, and disregard all evidence and inferences to the contrary. *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 227 (Tex. 1990). If there is any evidence of probative value which supports the trial court's findings, a no evidence point must be overruled. *Id.* In order to prevail, the state had to show probable cause for seizing the currency. *$56,700 v. State*, 730 S.W.2d 659, 661 (Tex. 1987). The state had to establish a substantial link between the seized currency and the defined criminal activity. *Id.* Specifically, it had to prove that the money was derived from the sale, distribution, or delivery of illicit drugs or other commercial undertaking violative of TEX.REV.CIV.STAT.ANN. art. 4476–15 § 5.03(a)(6) (Vernon Supp.1989) (repealed effective Sept. 1, 1989); now TEX.CODE CRIM. PROC.ANN. arts. 59.01–.11 (Vernon Supp. 1992), or was used, or intended to be used, in violation of the criminal investment statute. TEX.REV.CIV.STAT.ANN. art. 4476–15, § 4.052

(Vernon 1964) (repealed effective Sept. 1, 1989); now TEX.HEALTH & SAFETY CODE ANN. § 481.126 (Vernon 1989).

■ The fact that the dog alerted to the briefcase, standing alone, does not constitute evidence that the currency was used in connection with a drug deal or criminal investment. In fact, the dog handler testified that the dog's alerting to the briefcase did not indicate that the currency was a product of a violation of the Controlled Substances Act. No cocaine was found in the briefcase, the Porsche or Guel's home.

■ Similarly, the coded ledgers and the scale found in Guel's home do not tend to prove that the currency was used in connection with a drug deal or criminal investment. While they may tend to show that Guel was involved in illegal activities, they do not link the seized currency to any offense.

■ However, several statements, allegedly made by Guel, constitute some evidence linking the money to prohibited activity. According to the arresting officers, Guel told them that he was delivering the money for "the Columbians." He stated that he had already delivered some cocaine, and that the money in the briefcase was "Columbian drug money." Officer DeBlanc also stated that Guel told them he delivered a quantity of cocaine measured in kilograms, but DeBlanc did not recall the specific quantity. Officer Redman testified that $80,000 would purchase approximately five to seven kilograms of cocaine. These statements constitute some evidence supporting the trial court's judgment. We overrule the first point of error.

In reviewing the factual sufficiency of the evidence, we consider and weigh all of the evidence. The trial court's findings can be set aside only if they are so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (per curiam). In addition to the evidence supporting the judgment, we now consider the contrary evidence.

On cross-examination, Officer DeBlanc admitted that Guel was never charged with the

drug deal that he allegedly confessed to committing. Officer DeBlanc testified that Guel made incriminating statements both before and after a tape recorded interview. None of these incriminating statements were included on the recording. Officer DeBlanc also admitted that he could only speculate that the currency was derived from the drug transaction that allegedly occurred earlier that day. Similarly, Officer Redman indicated that his belief that the currency was derived from an aggravated drug transaction was based solely on Guel's statements.

The evidence relied upon by the state is inherently suspicious. The only evidence linking the currency to a felony drug transaction was statements volunteered by Guel. The statements were made after his arrest, and after he received Miranda warnings. Although no drugs were found in the car, Guel allegedly admitted that currency was derived from the sale of drugs, and that the car he was driving was obtained with money given to him by "the Columbians." This court is not so naive as to accept all oral confessions made after Guel's arrest.

However, the trial court, and not this court, was the sole judge of the credibility of the witnesses and the weight to be given to their testimony. While this court may have reached a different conclusion, we cannot substitute our opinion for that of the trier of fact. After reviewing all of the evidence, we cannot say that the trial court's findings were so contrary to the overwhelming weight of the evidence as to be clearly wrong. We overrule the second point of error and affirm the trial court's judgment.