$19,070.00, Appellant,

v.

The STATE of Texas, Appellee.

No. C14–92–00864–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 6, 1994.

David R. Bires, Houston, for appellant.

Kimberly Aperauch Stelter, Houston, for appellee.

Before ROBERTSON, CANNON and DRAUGHN, JJ.

## OPINION

CANNON, Justice.

This is an appeal from a judgment of forfeiture in favor of the State. The subject of the forfeiture is $19,070 found inside a safe in the bedroom closet of the claimant, Dennis Womack. Claimant complains in three points of error that the evidence was insufficient to establish a link between the seized funds and commission of a felony under the Texas Controlled Substances Act, that the police exceeded the scope of the search warrant, and that the trial court improperly refused his motion to strike the trial court judge. We affirm.

On January 3, 1990, Houston Police officers executed a search warrant for a residence directing the officers to search for and seize any and all controlled substances. The warrant also directed the officers to arrest Dennis Womack, claimant of the seized funds. The officers searched the residence and recovered the following: six pyrex mixing cups containing wet cocaine residue found on the foot of Womack's bed; a plate with trace amounts of cocaine found in the same area of the bedroom; a scale with trace amounts of cocaine found on Womack's bed; another plate with trace amounts of cocaine and a razor blade found on top of the safe; $19,070 in U.S. currency found inside the safe; and a gram of marijuana found in another bedroom.

Womack was present during the search, knew the combination to the safe, and opened it at the officers' request. When he opened the safe, Womack stated that the money was his and that he was going to use the money to buy a house for his mother, Shirley Womack. The money, mostly in denominations of tens and twenties, was wadded up and was bound with rubber bands. No drugs were found inside the safe. Also in Womack's bedroom were a nine millimeter Smith and Wesson semi-automatic weapon with 28 live rounds and a Winchester 12 gauge shotgun with six live rounds.

At trial, Officer Charles Jefferson, who furnished the affidavit supporting the search and arrest warrant and who was present at the execution of the warrant, testified. The probable cause affidavit was based on information from a reliable anonymous source and the personal surveillance of Officer Jefferson. The informant had seen cocaine inside the house and stated that Womack was selling cocaine out of the house. Jefferson had observed numerous persons, some recognized as known drug users, come to the house and leave after staying only a short period of time. Based on his experience, Jefferson testified that he knew cocaine was mixed with other substances in containers like the seized pyrex containers to manufacture crack cocaine. He also testified that, based on his experience, the pyrex mixing bowls, the razor blade and the scale with trace amounts of cocaine found in the bedroom were evidence of narcotics sales.

Officer Gary Doyle was present during the search and testified based on his experience investigating the narcotics trade and his knowledge about the conversion of powder cocaine to crack cocaine. He stated that after a liquid is mixed with the powder and the substance cooked, it then cools and a razor blade is used to slice the crack into the size rock that is desired. Officer Doyle also testified that the house was located in a high crime area.

Womack was not present at the forfeiture trial, but his family testified that only $1,500 of the seized money belonged to him. Three of Womack's relatives testified that they had contributed funds to the safe, and the purpose of the money was to purchase a house for Dorothy Smith, Womack's grandmother. Each of these relatives was employed, and they testified that they put extra money in the safe whenever they could afford it, although there was no explanation offered for the source of the funds contributed by Womack.

Womack lived in the home where the search was conducted with his mother, disabled grandmother, and younger sister. His mother, Shirley Womack, testified that she had been contributing to the fund in the safe since 1971 at the rate of $50 to $75 per month. She testified that she did not know the combination to the safe, but had it written down. She stated that approximately $10,470 of the money belonged to her, even though she had kept no written accounting of her contribution.

Womack's uncle, Lawrence Smith, also testified he had contributed to the fund to purchase a home for his mother. He testified that whenever he could afford it over the past twenty years, he gave money to his sister, Shirley, to be placed in the safe. He estimated his contributions totaled $3,600. He also had no written records of his contributions.

Huey Smith, another uncle, testified he had been making contributions since 1971. He claimed to have deposited about $3,500 in the safe towards the purchase of a home for his mother. He stated that everyone who contributed to the fund kept up with how much was in the safe and how much each contributed.

At the conclusion of the trial, the court ordered the $19,070 forfeited to the State, final judgment was entered on July 29, 1992, and this appeal resulted. Womack contends in the first point of error that the evidence is insufficient to meet the State's burden of

proving that the currency seized was tainted by illegal activity.

A forfeiture proceeding is a civil proceeding. TEX.CODE CRIM.PROC.ANN. art. 59.05(b) (Vernon Supp.1993). The State has the burden to prove by a preponderance of the evidence that the property is subject to forfeiture. *Id.* In order to prevail, the State must show probable cause for seizing the currency. TEX. CONST. art. I, § 9; *Fifty-six Thousand Seven Hundred Dollars in U.S. Currency v. State,* 730 S.W.2d 659, 661 (Tex.1987). The State must establish a substantial connection between the seized currency and the defined criminal activity. *$56,700 v. State,* 730 S.W.2d at 661. Thus, the State had the burden to show that, considering all the evidence, it was more reasonably probable than not that the seized money was either intended for use in, or derived from, the manufacture, delivery, sale, or possession of a controlled substance. *State v. $11,014.00,* 820 S.W.2d 783, 784 (Tex.1991); *Money of the U.S. in the Amount of $8,500.00 v. State,* 774 S.W.2d 788, 792 (Tex.App.—Houston [14th Dist.] 1989, no writ).

Point of error one is styled only as an insufficiency of the evidence point.[1] In reviewing the factual sufficiency of the evidence, we consider and weigh all of the evidence. The trial court's findings can be set aside only if they are so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). We may not substitute our opinion for that of the trier of fact and determine that we would reach a different conclusion. *Glockzin v. Rhea,* 760 S.W.2d 665, 666 (Tex.App.—Houston [1st Dist.] 1988, writ denied).

In the absence of findings of fact and conclusions of law, as in this case, we presume the trial court made all necessary findings to support the judgment. *Roberson v. Robinson,* 768 S.W.2d 280, 281 (Tex.1989). When there are no findings of fact in an appeal from a trial to the court, the reviewing court must affirm the judgment if it can

1. Claimant has not raised a no evidence point; thus, we would have no authority to render judgment, as prayed for by claimant. *See B.J. Valve* *& Fitting Co. v. Elliott Valve Repair Co.,* 679 S.W.2d 1 (Tex.1984).

be upheld on any legal theory that finds support in the evidence. *In the Interest of W.E.R.*, 669 S.W.2d 716, 717 (Tex.1984).

■ The evidence tending to support the judgment is as follows: pyrex bowls which could be used for mixing crack cocaine contained trace amounts of cocaine; scales, often used in narcotics sales, contained trace amounts of cocaine; a plate containing trace amounts of cocaine and razor blade, which could be used to cut rocks of crack, were on top of the safe; the money was wadded up and in small denominations; and weapons were found. All of these items were found in the bedroom where the safe containing the money was found.

■ A review of the remaining evidence finds the testimony by Womack's relatives that they contributed to the money in the safe to purchase a home for Womack's mother and grandmother. There were no records to support this testimony. The burden is on an alleged innocent claimant to prove that the money that was recovered was subjected to forfeiture without his knowledge or consent. *See McDorman v. State*, 757 S.W.2d 905, 907 (Tex.App.—Eastland 1988, writ denied); *Gaston v. State*, 641 S.W.2d 261, 263–64 (Tex.App.—Houston [14th Dist.] 1982, no writ). Here, the evidence conflicted as to the ownership of the money. Womack claimed at his arrest that the money was his, and his family members contradicted that statement. It is within the trial court's province as the trier of fact to judge the credibility of the witnesses and to resolve any conflict or inconsistencies in the testimony. *Nelson v. Dallas Indep. School Dist.*, 774 S.W.2d 380, 382 (Tex.App.—Dallas 1989, writ denied).

Other conflicts and inconsistencies are evident in the testimony. The family members testified that they had been putting money into this safe for approximately twenty years, yet Shirley Womack testified they did not have a safe until three or four years before trial. She also testified she did not know how the marijuana found in her bedroom came to be there. She was evasive when asked about her son's prior criminal record, including a previous conviction for possession of cocaine, although she acknowledged he had been found in possession of crack cocaine

while on probation for a theft conviction. She also asserted that the police may have planted the pyrex containers and other drug paraphernalia in her house because they were not there earlier. Lawrence Smith also was an inconsistent witness. He testified he had an account with a credit union, but then claimed the reason the money was kept in the safe was that he did *not* have a bank account.

■ The trial court, as the sole judge of the credibility of these witnesses, did not believe their claim that they contributed to the cash in the safe for twenty years. The court apparently found it incredible that these witnesses each claimed to have deposited funds in the safe in amounts that exactly totalled the seized funds, all without the benefit of any records. The court found that the money belonged to Womack, and that there was a substantial connection to the sale or manufacture of cocaine. *See Three Thousand Four Hundred Fifty Dollars in U.S. Currency v. State*, 743 S.W.2d 759, 762 (Tex. App.—El Paso 1988, writ denied) (upholding trial court's rejection of appellant's claim that seized money came from legitimate business). The State's proof must raise more than a mere surmise or suspicion, but need not exclude every other possible use or source of the money. *$8,500.00 v. State*, 774 S.W.2d at 792. The court may draw any and all inferences reasonably capable of being drawn from the circumstances shown in the evidence. *$3,450 v. State*, 743 S.W.2d at 762. After reviewing all of the evidence, we cannot say that the trial court's findings were so contrary to the overwhelming weight of the evidence as to be clearly wrong. *See also $136,205.00 (Johnson) v. State*, 848 S.W.2d 888, 891 (Tex.App.—Houston [14th Dist.] 1993, no writ) (upholding forfeiture of money found in bedroom closet safe in house where marijuana discovered); *Barron v. State*, 746 S.W.2d 528, 531 (Tex.App.—Austin 1988, no writ) (upholding forfeiture of money found in safe in house where methamphetamine lab located). We find that the court's judgment is supported by the evidence, and we overrule the first point of error.

In the second point of error, Womack contends that the officers conducting the search acted outside the scope of the warrant and lacked authority to search the safe and seize the currency. He argues that the officers conducted a general exploratory search because the safe was not specified in the warrant. We disagree.

All the paraphernalia containing traces of cocaine were found in Womack's bedroom, where the safe was located. A plate containing traces of cocaine and a razor blade was on top of the safe. The warrant authorized a search of the entire house for the presence of controlled substances and the police were authorized to search wherever controlled substances might be hidden. Officer Jefferson testified that in his experience a safe might contain controlled substances. Officer Doyle also testified that he has recovered narcotics from safes before. Probable cause to search exists when facts and circumstances within the knowledge of the officer on the scene would lead a reasonable person to believe that an instrumentality of a crime or evidence of a crime will be found. *McNairy v. State,* 835 S.W.2d 101, 106 (Tex. Crim.App.1991). In our opinion, it was reasonable for the officers to believe, based upon the totality of the circumstances, that the safe might contain controlled substances.

Furthermore, Womack voluntarily opened the safe at the officers' request. Womack contends that his consent was not voluntary because he was under arrest at the time. We reject this contention for several reasons. First, Womack waived any complaint about the voluntariness of the search by failing to object in the trial court. *See Garces v. State,* 727 S.W.2d 48, 49 (Tex. App.—Houston [14th Dist.] 1987, pet. ref'd). In addition, there was no testimony that Womack did not consent to the search or that his opening the safe was not voluntary. In the absence of any testimony from Womack, no evidence exists that he did not voluntarily consent to the search of the safe. *See id.* Finally, the fact that a person is under arrest does not, in and of itself, prevent a free and voluntary consent to search. *Juarez v. State,* 758 S.W.2d 772, 775 (Tex.Crim. App.1988).

Womack also contends that the police lacked authority to seize the money because the currency was not mentioned in the warrant. Section 59.03 of the forfeiture statute specifically provides that "[s]eizure of property subject to forfeiture may be made without warrant if: ... the seizure was incident to a lawful arrest, lawful search, or lawful search incident to arrest." TEX.CODE CRIM.PROC.ANN. art. 59.03(b)(4) (Vernon Supp.1993). Here, the search of the residence was authorized by a valid warrant, and the police had a reasonable basis for drawing a connection between the large amount of cash in the safe, claimed to be owned by Womack, and the apparent signs of narcotics trafficking found in his bedroom. Officer Doyle testified that the police seized the money because they had reason to believe that it was an asset obtained through narcotics trafficking. We find that the officers did not exceed their authority, and we overrule the second point of error.

Womack complains in the third point of error that the trial court erred in failing to grant his motion to strike the presiding judge. Chapter 74 of the Government Code states that "[i]f a party to a civil case files a timely objection to the assignment [of a judge assigned under this chapter] the judge shall not hear the case." TEX.GOV'T CODE ANN. § 74.053(b) (Vernon Supp.1993). Forfeiture proceedings "shall proceed to trial in the same manner as in other civil cases." TEX.CODE CRIM.PROC.ANN. art. 59.05(b) (Vernon Supp.1993).

We find that the trial court did not err in denying Womack's motion because his objection was not timely. Section 74.053(c) states that "an objection under this section must be filed before the first hearing or trial, including pretrial hearings, over which the assigned judge is to preside." TEX.GOV'T CODE ANN. § 74.053(c) (Vernon Supp.1993). Womack claims he objected the day before trial, but no motion is contained in the record. The only reference to a motion to strike the judge is contained in the statement of facts from the trial. The record before this court shows that after the case was called, the motion was urged and overruled.

An objection to the judge after the case has been called is not timely. TEX.GOV'T CODE ANN. § 74.053(c); *Turk v. First Nat. Bank of West Univ. Place,* 802 S.W.2d 264, 265 (Tex. App.—Houston [1st Dist.] 1990, writ denied).

Even had Womack objected the day before trial as he claims, the objection was still untimely. As the trial court noted, and counsel at trial acknowledged, the court had ruled on the case previously by granting Womack's motion for continuance. Objections filed after an assigned judge considers a motion for continuance are untimely. *Money v. Jones,* 766 S.W.2d 307, 308 (Tex. App.—Dallas 1989, writ denied).

We overrule the third point of error and affirm the judgment of the trial court.

DRAUGHN, J., not participating.